Paul A. SILKE, Administrator of the Estate of Paul Silke, Deceased, Plaintiff,

v.

PENN CENTRAL TRANSPORTATION COMPANY, Defendant.

No. C71–518.

United States District Court, N. D. Ohio, E. D.

Jan. 8, 1973.

Richard M. Markus, Sindell, Sindell, Bourne, Markus, Stern & Spero, Cleveland, Ohio, Socrates J. Space, New Philadelphia, Ohio, for plaintiff.

John F. Dolan, Thomas R. Skulina, Cleveland, Ohio, for defendant.

## MEMORANDUM and ORDER

BEN C. GREEN, District Judge:

Plaintiff, administrator of the estate of Paul Silke, seeks to recover against the defendant, Penn Central Transportation Company, for the alleged wrongful death of his decedent, as a consequence of plaintiff's decedent being struck and killed by a train at defendant's grade crossing in Uhrichsville, Ohio.

This matter is now before the Court on cross motions for summary judgment, with a stipulation of facts entered into by both parties.

It is stipulated that defendant's grade crossing "intersects North Uhrich Street with the tracks proceeding in an east-west direction," in the City of Uhrichsville. It is further agreed that:

At the time involved in this case, there was a short-arm gate at the north side of the grade crossing at said intersection that obstructed vehicle traffic and pedestrian traffic on the west side of North Uhrich Street and the west pedestrian sidewalk, [but] . . . no gate on the north side of that crossing that obstructed vehicle traffic and pedestrian traffic on the east side of North Uhrich Street and the east pedestrian walk.

Further:

Plaintiff's decedent stopped on the northeast corner of said intersection to await the passing of an eastbound train proceeding on Track No. 1 which is the center set of tracks at that crossing. After the eastbound train passed the intersection, plaintiff's decedent entered into the area at or nearby the northerly set of tracks where he was struck by a westbound train proceeding on Track No. 2.

It also appears to be undisputed that the short-arm gates located at the said grade crossing were in conformity with the orders issued by the Public Utilities Commission.

The parties are in agreement that liability in this case is dependent upon the terms of Section 4907.48 of the Ohio Revised Code. That statute, in pertinent part, provides:

All gates, bells, or devices erected under the direction of the public utilities commission shall be built . . . in the manner, and of materials approved by the commission. Such devices so authorized shall be located in the highway or street on one or both sides of the railroad tracks, as the commission deems the public safety requires. Such gates shall be so constructed that when closed they obstruct or prevent passage across such railroad from the side on which a gate is located. . . . For every neglect of duty imposed by this section such railroad shall forfeit twenty-five dollars.

The controlling legal issue is well-stated in plaintiff's brief, wherein it is said that "the sole question before the Court is whether the defendant company violated a statutory duty under Section 4907.48 of the Ohio Revised Code, in that the crossing gates were not constructed so that they would obstruct or prevent passage across the railroad from the northeast quadrant." Plaintiff's argument is that, by virtue of Section 4907.48, the defendant is under a strict statutory duty to construct gates at their crossings "so that when closed they obstruct or prevent passage across such railroad from the side on which the gate is located." This duty, continues plaintiff, is in no way obviated by the statutory mandate in Section 4907.48 that the gates be constructed in conformity to the "direction of the public utilities commission." Plaintiff then contends that summary judgment should

be entered in his favor on the question of liability, as Section 4907.62 of the Ohio Revised Code imposes absolute liability upon a railroad violating any of the terms of Section 4907.48.

Defendant argues that Section 4907.-48, containing criminal and civil sanctions, requires a strict construction. Defendant contends that there being no mention of sidewalks in the language of the statute, Section 4907.48 imposes no duty upon it to erect a gate which would bar pedestrian access from a sidewalk. Defendant also argues that the order of the Public Utilities Commission did not require it to construct sidewalk gates in the area in question and that by complying with the order of the Commission it has discharged its statutory duties. On this basis, defendant seeks summary judgment in its favor.

Again, the only question raised by the motions is whether the defendant breached a statutory duty imposed by Ohio Revised Code Section 4907.48. The Code section in question was carried forward into the Ohio Revised Code in 1953. However, essentially the same language was in force in the Ohio General Code as § 590, and earlier in the Title III of the Ohio Revised Statutes as § 247b thereof.

Present Section 4907.48 of the Ohio Revised Code was in force in 1900 (with "railroad commission" being substituted for "public utilities commission") when the Ohio Supreme Court decided Lake Shore & Michigan Southern R. R. Co. v. Ehlert, 63 Ohio St. 320, 58 N.E. 812 (1900), a case whose facts are on all fours with the instant action. That case also involved a pedestrian being struck by a train at a crossing where the short-arm gate did not reach a sidewalk on the same side of the crossing so as to obstruct pedestrian access to the tracks. In the syllabus of that case, the court held:

1) When the gates across a highway at a railroad crossing are closed, they definitely warn the public that the crossing, whether it is of a single or a double track, is for the time being, to be used for the passage of trains.

2) One who, with knowledge of such warning, passes a closed gate and takes a position upon the crossing is guilty of negligence which will prevent a recovery for injuries he may receive from a passing train. *Id.* at p. 320, 58 N.E. at p. 812.

Moreover, the court stated:

The allegation of the petition that the company was negligent "in not maintaining at said crossing a sufficient obstruction to the passage of people on the sidewalk" indicates a misconception of its duties. It is not required to interpose such obstacles as will make it impossible for persons to go upon the crossing. *Id.* at p. 327, 58 N.E. at p. 813.

It is quite clear, then, that the Ohio Supreme Court has not interpreted the statute in question in the strict manner plaintiff now requests. Plaintiff has cited no authority which would indicate that the Ohio courts have viewed Section 4907.48 in a manner inconsistent with the *Ehlert* decision. Plaintiff's theory of liability is premised upon argument as to the alleged proper construction of the statute.

In the Court's opinion, a short-arm gate, erected pursuant to order of the Ohio Public Utilities Commission, which extends across a railroad crossing so that it obstructs vehicle traffic upon the roadway facing the gate is sufficient to "obstruct or prevent passage across such railroad from the side on which a gate is located." That being so, defendant did not violate Section 4907.48 of the Ohio Revised Code by the erection of the gate in question.

The Court is further constrained to reach this holding by virtue of Section 4905.04 of the Ohio Revised Code, which vests the Public Utilities Commission:

. . . with the power and jurisdiction to supervise and regulate public utilities and railroads, . . . and

to promulgate and enforce all orders relating to the protection, welfare, and safety of railroad employees and the traveling public.

■ This statute imposes upon the Public Utilities Commission the duty of interpreting and enforcing the laws regarding regulation of railroads. The Ohio Supreme Court has recognized that the Ohio Legislature has vested in the Public Utilities Commission a large measure of discretion in the administration of such laws. Hood v. New York, Chicago and St. Louis Rd. Co., 166 Ohio St. 529, 144 N.E.2d 104 (1957).

■■ In this case, the gate in question was erected upon order of the Public Utilities Commission. The result which plaintiff seeks, in effect, would require an adjudication that the Public Utilities Commission misinterpreted the requirements of Section 4907.48, in that plaintiff's theory of liability depends upon a finding that the gate as ordered by the Public. Utilities Commission did not comply with the statutory mandate. As the Ohio Legislature has seen fit to designate the Public Utilities Commission as the arbiter of the statutes controlling on the operation of railroads, this Court does not believe that such interpretation should be set aside except upon the clearest evidence that the Commission was in error. The most that can be said regarding Section 4907.48 is that the language may be somewhat uncertain. That being so, the interpretation thereof by the Ohio Public Utilities Commission should be controlling. Any ambivalence within the statute, which does not reach constitutional proportions, must be cured by the legislature not the judiciary. Cincinnati, Hamilton & Dayton R. R. Co. v. Sullivan, 32 Ohio St. 152 (1877).

Plaintiff's motion for summary judgment will be denied. Defendant's motion for summary judgment will be granted.

It is so ordered.